Yes, and we'll hear first from Mr. Ioffe. Yes, Your Honor. All right. You may proceed. Your Honors, good morning. May it please the Court to turn to Ioffe for Petitioner Wuqian Biao. I would like to reserve two minutes of rebuttal time, if possible. Your Honors, this is a fairly straightforward case where there's only one issue, which is whether the petitioner established an objectively reasonable possibility of future persecution. So there's four strong factors, I believe, in Petitioner's favor, Your Honor. One is that the BIA did not address the credibility and corroborations findings of the judge, so we presume incredible for the purpose of the appeal. Number two, there's still evidence. But, you know, the Supreme Court made clear in Ming Dai that the fact that the agency, for purposes of decision, takes someone as credible doesn't mean that they get taken as persuasive. Yes, Your Honor, I agree completely. So the Court can look at all factors on the whole, right? As the agency did. The agency took the facts that were provided and then found them to be unpersuasive and insufficient. Right, Judge, but only with respect to the future fear. They made absolutely no mention of credibility or corroboration. So at the very least, we have to take his testimony as factual or presume for the purpose of appeal that what he testified to occurred, Your Honor, because they did not disturb that, at least. We could take some issues with, perhaps, some of his evidence. I understand the distinction you're drawing, so perhaps you could explain it to me again. Well, Your Honors, at least on the surface, we have to assume that he is credible because the Board did not disturb that finding. What I think Ming Dai said is we can... I said those are the facts that he related. That doesn't necessarily mean the inferences he draws from that. And so when we come to analyze, in this case, whether he has a well-founded fear of future persecution, there's a clear distinction between whether he is being credible with regard to his subjective fear and whether an outside observer, in this case, whether the evidence compelled the agency to conclude that, yes, there was an objectively reasonable fear. And I think that's where the distinction becomes important. The fact that he tells us he's afraid for these reasons doesn't mean that the agency has to reach that conclusion. You don't have to reach that conclusion, Your Honor, but what I mean is there's no red flags, discrepancies, or clear inconsistencies on the record that the court can take up and say the whole claim is not credible because they didn't disturb it. The judge highlighted some issues, which I also addressed in my brief, and the Board did not address my contentions, Your Honor. So if the court finds some issues with credibility, I would ask for a remand so it can be properly considered. But even if, you know, we find that the agency said your client was credible and he was fearing prosecution from the Chinese authorities because he's a Falun Gong practitioner, I mean, I'm having trouble with the next step as well. His parents are Falun Gong practitioners. They have been imprisoned. There was nothing in the record to suggest that they're being persecuted. So how did the BIA err? Judge, well, they did address that, and as I argued in my brief, that the parents are not similarly situated. They are similarly situated in some respect, Your Honor, but he did explain that the parents are much older, and at least according to his explanation, the police did contact the parents. The parents told them we're too old and we don't practice anymore and they were left alone. I mean, those are very good points and very strong arguments to make to the trier of fact. Yes. To the one who gets to assess the inferences, but the agency came out the other way, and the standard we have is does the record compel a contrary conclusion? Judge, what about the three precedential strong cases that rule this circuit? I mean, the Board did not appear to address my arguments about those cases that do seem to compel. At least two of them are extremely similar to our case and seem to compel the result that we have widespread persecution of Falun Gong members, and we have at least some evidence of individualized risk in him. The letters from his parents, the fact that his wife was detained for one day, the fact that supposedly police look for him often. So these two cases, Xiaovi Mikesi, we got Zeng V. Ashcroft, and Xiaovi Gonzalez, these latter two cases, extremely on point. The petitioners in those cases were also not arrested, but somebody in China, in one case it was a friend, in another case it was a brother, was detained, and in both cases the police expressed interest in looking for them, and we only have to establish a one in ten chance, and the Falun Gong persecution was clear in the record and is still ongoing to this day. The dates, wasn't some of that stale, those letters? So why didn't the PIA get to assess the staleness of some of that info? The letters were not stale at the time they were filed, I believe, Your Honor. I mean, they might be stale relative to now, but I can look in the record. The letters were filed in 2019 from his wife and the parents from 2019 as well, Your Honor, so that was at the time the hearings were taking place. If you look at the record, page 218 and 222. And so that was our argument, Your Honor, that the Chinese government demonstrated an individualized interest in the petitioner. Both letters say that the parents' letter especially seems key, Your Honor, because it talks about police accusing him of participating in American Falun Gong, and it seems like they do have knowledge of his American activities, and they ask him to stop doing criminal things overseas to destroy country. And that's the letter from his wife. If the parents' letter says that they come to his home and ask about his situation and want him to accept punishment, is that 10% chance, Your Honor? I would argue it is because that's a very low level at the Ninth Circuit. So based on that, we would argue that the Board made an error. And I'd like to reserve my three minutes if the Court has no other questions at this time. Thank you. All right. So we'll hear now from Ms. Pham. May it please the Court, Nancy Pham on behalf of the Attorney General. Your Honors, this Court should deny the petition for review because, as the judges have pointed out, that the standard here is substantial evidence, and that standard supports the agency's determination that the petitioner failed to meet his burden for asylum and withholding of removal. And just to flesh out that standard, which frames how this Court should view the case, the substantial evidence standard essentially asks the question whether any reasonable adjudicator could have found, as the agency did, put in another way, granting this petition for review requires that every other reasonable fact finder have found the opposite way. The biggest concern I have here is the Board moved very narrowly. The immigration judge gave multiple grounds, and perhaps most importantly, with regard to credibility. And the BIA, as has been its habit sometimes in recent years, and I have to say, I don't know that you have any ability to say things to the BIA, but I understand why they're deciding to limit their review, but it makes it really difficult for us to figure out what the implications are, because we're supposed to rule based on how the BIA ruled. And if you take out credibility, what can you do with the argument which the government has made in the answering brief? The immigration judge says that the petitioner, what we call the petitioner, has not provided any credible evidence of so on and so forth. And your brief itself, at one point, includes that credibly, I guess it's an adverb, documentary evidence, did not credibly establish the police had any specific interest in the petitioner. Well, you heard the little debate we had earlier with your colleague. I got the same problem looking at the government. What does it mean when the BIA seems to carve credibility out? To what extent can we still recognize the IJ's treatment of credibility as a factor to consider in weighing the evidence? How do we sort that out? Yes, Your Honor. So, turning to the record, I understand the judge's concern, but in AR-59, essentially the IJ says, you know, I don't find the petitioner credible, but sort of taking his testimony and his documentary evidence as fact, we move on to the next part of the analysis. So it is a little bit of a legal dance, if you will, but basically in reviewing this case we're looking at the facts as the petitioner presented them, and even given that piece, as the board found, there's just not a well-founded fear of future persecution. When we turn to the factual record, the sole incident that we are talking about that supports petitioner's claim is that August 28, 2011 interaction, or near interaction, if you will, with police. When we look specifically at petitioner's testimony, he says that he was practicing Falun Gong in a private residence with a few others. But really the key thing, because everyone can see, is there doesn't rise to the level of past persecution, and the question is future persecution. So it's really kind of more relevant, what's their interest in him specifically, because there's lots of evidence to suggest the government of China has interest in Falun Gong generally. So the question is whether it's individualized in any way to him, so that he has a personalized level of risk. And there I'm just not quite sure what to make of the BIA's ruling, because the wife's letter says many of those friends who practiced Falun Gong with you were still in jail. Police insisted that you were colluding with the American Falun Gong to destroy the country, and they want you to return immediately. So what's the BIA's response to that item of evidence? It's to say, however, the respondent only testified that the police came to his house to inquire as to his location, and never testified that they believed he was collaborating against the Chinese government. And it cites pages 50 and 51. And then you go to page 51, and he testifies as to what the wife said, and says, first she told me that the police came and asked me to return because I was Falun Gong practitioner. Police asked me to return and turn myself in to the police station and report. There just seems to be a mismatch. The BIA seems to just minimize. So he didn't testify anything that matched the letter. You put them side by side, and they do seem to match. So what are we to make of that? Yes, Your Honor, I think the key is to focus on petitioner's testimony and the statement that he submitted in support of his asylum application. Turning briefly back to the August 28, 2011 incident, before the immigration judge at AR-158-60, there's specific back and forth questions about what occurred, and he essentially escaped out the back door. He testified that he didn't know why police were there. So when we look at his actual testimony before the agency, there's nothing connecting, there's nothing to indicate that the police actually connected petitioner with the practice of Falun Gong.  As the agency pointed out, there are no dates involved there. There was a mention earlier that the wife being detained. When we peel back the testimony of the petitioner, he explains that she was actually detained because she misrepresented that he was away on a business trip. So there was actually nothing tying that detention to Falun Gong. And also, petitioner himself testified that he never practiced Falun Gong openly with other people, and that's why he may not want to continue. I haven't gotten an answer to the very specific question that I set up for you, which is that the BIA's reason for rejecting the wife's letter as persuasive is that it didn't match his testimony, and that does not seem to be correct. So why doesn't it have to go back so they can read the testimony correctly? Now maybe they'll set it side by side and still reach the same conclusion, but if they misdescribe the testimony and pretend that it doesn't mention Falun Gong when it does, why doesn't that go back? It doesn't go back, Your Honor, because when you look to petitioner's actual testimony about it, it's always a quotation from his wife. When he is provided the opportunity to explain what happened, he can never actually say that the police were targeting him due to his Falun Gong practice. The government would just highlight the importance of the statement he provided in support of his asylum application. There he has the freedom to explain precisely what happened exactly as he wants to share it, and he never once mentions there that they actually asked him or connected him to the practice of Falun Gong. He's never arrested. He's never detained. So there's just, in the record that we have, there's... So he didn't testify that they had connected him to Falun Gong? His testimony is that his wife said that, you know, essentially that the police came and asked about his whereabouts due to his practice of Falun Gong. So the frame is always through his wife, but when he's able to, you know, in front of the IJ, provide that testimony or, you know, in support of his asylum application, provide that statement, he never actually says that himself. He doesn't know because he fled the country, pretty clear, left his home, and he didn't succeed in leaving China for maybe a couple of months, but he wasn't around for any of the encounters with the police. The IJ tells him early on he's going to be required to provide corroboration. Ultimately, we have the letter from the wife and the letter from the parents. But the PI passes on it. We need not address the remaining arguments regarding the adverse credibility finding, whether the respondent adequately corroborated his claims for relief. So does that mean we can't do what you seem to be suggesting that we do? And because he didn't testify personally about Falun Gong, we aren't supposed to look to the corroborating evidence that he provided? The DIA may have tied our hands in trying to follow the path that you've laid out for us. Your Honor, the government's position is that even taking everything that the petitioner said as fact, as the agency did, the record is insufficient to show that the police or the government of China targeted petitioners specifically for his practice of Falun Gong. Understand that the wife's letter makes those statements, but, again, the government would rest on every and whenever the petitioner has the opportunity to express and explain what occurred, he himself never actually is able to provide any evidence that the police targeted him because of his practice of Falun Gong. And in addition to that, there's other pieces of evidence in the record that further support that point. For instance, as Your Honor pointed out, his parents are practitioners of Falun Gong and have been unharmed. He was able to travel to Beijing to receive a visa. He was able to leave the country and depart the airport. And there's evidence in the record at AR 252 to 255, which is Exhibit 7, but essentially that the Chinese government has security measures that would prevent someone from leaving if they were a target. So there's a wealth of evidence to support the fact that the police were not actually targeting a petitioner because of his practice of Falun Gong, and that's what makes the records insufficient to demonstrate that his fear of future harm is objectively reasonable. And, again, the government would also just highlight the standard that we have here. It is the substantial evidence standard really says to disturb this finding, every reasonable fact finder would have to find the other way. And if there are no further questions, the government would submit that there's no well-founded fear in this case. Petitioner's fear of harm is not objectively reasonable. When you look at the record, there's nothing to show that he would practice Falun Gong openly. His description of the interaction in August 2011 never actually ties him to Falun Gong. In front of the immigration judge, he says that he doesn't know why the police were there. So when you look at his own words in his asylum statement and in the testimony before the IJ, there's just insufficient evidence to show that his fear of future harm is objectively reasonable. And for those foregoing reasons, we would ask that the court deny this petition for review. Thank you, counsel. All right. We'll hear a rebuttal from Mr. Ioffe. Your Honors, you know, this is interesting because actually in Zhang v. Ashcroft, the court held that we conclude any reasonable adjudicator would have to conclude that Zhang would face a clear probability of persecution upon return to China. So in that case, Your Honor, on similar facts, they granted withholding of removal, a much higher form of relief than asylum that requires only 10%. And as we've heard, the government appears to concede the issue that one of the Honorable Judges raised regarding credibility. They concede that we should take the facts as Petitioner presented them. And if we do that, then his declaration does not even come into play. You know, DHS, I mean, the government tries to relitigate his credibility finding here, Your Honor, which the board declined to do. They could have done so. And it makes no sense for the court to ignore relevant evidence, as government counsel asked the court to do, to ignore the letters crucial to his case. Why would the court do that? That was part of his presentation for his case. That was part of his evidence to support his claim, to ignore those letters when they provide relevant context. It doesn't make any sense. Well, they're not, I mean, just as evidence, they're not all that compelling. Frankly, given the specific obligation put on him by the IJ to come up with something, I look at what was ultimately produced as a home. Well, Your Honor, we have a farmer. I mean, I'd be able to say it doesn't satisfy a corroboration requirement, but it sure doesn't say very much. And is it so strong as it compels the agency to make the conclusion that you think that they had to make? I believe it is, Your Honor, just in light of the three precedential cases that are good law. I confess I mix up the cases, but when I looked at them before, those cases seemed to involve, I couldn't tell you which one was which, but substantially more. I mean, the allegation of somebody mailing anti-government material back to China, there's nothing like that here. But that person was also never arrested, and only her friend was detained, versus we have a wife detained here, Your Honor. Well, do we know when she was detained? It was right after she went into hiding, and then they came to our home. It was, I think, 2019, Your Honor. I can check. Is that the trouble I'm having is this letter is very vague as to any dates about what happened in the past. Right. So he's been here seven years, and that's what I'm struggling with is this credible fear of future prosecution when the BIA didn't have any actual dates of past prosecution to rely on. Your Honor, that does seem to be a little bit of a shortcoming. He does not seem to be a very sophisticated petitioner, was not extremely educated, so he explained he only told his wife to focus on the fear, and that's why the dates may be lacking. I'm sure if the case is remanded, we can obtain additional evidence and try to firm it up, Your Honors. But, you know, with that said, the fact that it was many years ago, as I argued in the brief, both letters say that police are often looking for him. So the fact of the time passage, I would argue, is not so detrimental because the police, it's actually kind of in his factor because the police are still expressing interest in him after all these years. So it seems like they have not given up on him and have not forgotten him as it happened in certain cases with future fear, like a GUI holder where the police lost interest in the petitioner and stopped requiring to report. Here, they're still looking for him after all these years, which I would argue rises to the level of 10%. Thank you, Your Honors. Thank you, Counsel. The case just argued will be submitted.
judges: CLIFTON, COLLINS, Rodriguez